FIDELITY AND DEPOSIT COMPANY OF MARYLAND, PLAINTIFF AND APPELLANT, v. IRA R. CROUSE, DEFENDANT AND APPELLEE.

Submitted March 19, 1914—Decided June 13, 1914.

The defendant, in his written application to a surety company for a bond conditioned for the faithful performance of his contract for the erection of a school building, agreed (1) to pay certain stated annual premiums on the bond; (2) to pay the company "all loss, costs, damages, charges and expenses whatever, resulting from any act, default or neglect of mine, that said company may sustain or incur by reason of its having executed said bond or any continuation thereof;" and (3) in case the company should obtain the services of an attorney in connection with "any matter arising under or growing out of said contract in any manner whatsoever, all fees for such services and expenses incident thereto shall be properly chargeable against and paid by me." *Held*, that such covenants impose no liability upon the defendant to pay for the services of an attorney employed by the company to collect one of the annual premiums on the bond.

On appeal from the New Brunswick District Court.

Before Justices GARRISON, TRENCHARD and MINTURN.

For the appellant, *McDermott & Enright.*

For the appellee, *James S. Wight.*

The opinion of the court was delivered by

TRENCHARD, J. The plaintiff is a surety company. On May 24th, 1910, it received from the defendant an application in writing wherein the defendant applied to plaintiff for a bond in the sum of $52,785, conditioned for the faithful performance by the defendant of his contract for the erection of a school building for the board of education of the township of Woodbridge, Middlesex county. The bond applied for was duly executed and delivered.

The application contained, among others, the following covenants:

"In consideration of the Fidelity and Deposit Company of Maryland becoming security on my bond herein applied for, I do hereby covenant and agree to pay the premium or fees hereafter agreed upon, namely, $263.93 per annum, in advance, and I do hereby bind myself to pay the said company all loss, costs, damages, charges and expenses whatever, resulting from any act, default or neglect of mine, that said company may sustain or incur, by reason of its having executed said bond, or any continuation thereof. * * * I hereby further agree to accept the vouchers or other evidence of any loss paid by said company, under the aforesaid obligation, together with vouchers or other evidence of payment of all costs and expenses whatever incurred by said company in adjusting such loss or in completing said contract, as conclusive evidence against me of the fact and extent of my liability under said obligation to the said company. And I do further agree that, in case the company shall obtain the services of an attorney in connection with any matter arising under or growing out of said contract in any manner whatsoever, all fees for such services and expenses incident thereto shall be properly chargeable against and paid by me. And I do further agree that in the event of the company executing the bond for which this application is made, I will pay a fee of $5 and such expenses in excess thereof as said company may be put to in investigating this application or in connection therewith, in case the bond should not be delivered to the obligee."

The defendant duly paid his first year's premium on the bond, but when the premium for the second year became due he refused to pay that premium charge. Thereafter suit was brought against him by the plaintiff herein for this sum. Judgment was entered for $218.04, which was the earned premium due, according to the application, for the second year to the date that liability upon the bond was terminated.

After such recovery the plaintiff served upon the defendant a bill for the services of its attorneys in the suit for the pre-

mium, and requested payment, which was refused and this suit resulted.

We are of the opinion that the trial judge properly rendered judgment for the defendant.

It will be observed that the defendant, by the terms of the application, agreed to pay a certain sum as premium for the issuing of the bond; and further, obligated himself to pay the company all loss, costs, damages, charges and expenses whatever, resulting "from any act, default or neglect of mine," that said company "may sustain or incur by reason of its having executed said bond or any continuation thereof." Suit was brought for the amount of the premium due, according to the terms of the application. That was an action between the parties to the application contract. No suit was brought on account of the *"bond or any continuation thereof,"* by the obligee therein against the obligor, and no damages came to the obligor by "reason of its having executed said bond or any continuation thereof."

The plaintiff, however, contends that even so, yet it is entitled to recover by virtue of the clause of the application wherein the defendant agreed that, in case the company should obtain the services of an attorney in connection with "any matter arising under or growing out of said contract in any manner whatsoever, all fees for such services and expenses incident thereto shall be properly chargeable against and paid by me."

But we think the words "said contract" reasonably and by fair implication can apply only to the contract previously mentioned in the application, which contract is the contract to be entered into with the board of education of the township of Woodbridge. It is there, and there alone, that the defendant promises to pay for the services of an attorney. A controversy concerning the agreed premium on the bond was not a "matter arising under or growing out of said contract in any manner whatsoever." It will be observed that the application provides, in the last clause thereof, that in the event of the company executing "the bond for which *this application* is made, I will pay a fee of $5 and such expenses in excess

thereof as the said company may be put to in investigating *this application,* or in connection therewith, in case the bond should not be delivered to the obligee." It will also be observed that the bond was delivered.

The cases relied upon by the plaintiff are not in point.

The first is *United States Fidelity and Guaranty* v. *Hittle,* 96 *N. W. Rep.* 782. That was a suit where the obligor had *expended money in defending an action brought on the bond.* The second case is that of *Ellis* v. *Norman,* 44 *S. W. Rep.* 429. That was a case of a forfeited bail bond, where the surety had expended money in saving a full forfeiture, and an action was brought to recover such moneys and the incident expenses.

In the case at bar, as we have pointed out, suit was brought on the covenants contained in the *application* and no injury had resulted to the company by reason of its having signed the bond.

We think the present case is controlled by the reasoning underlying the decision of *Waln* v. *Cuthbert,* 54 *N. J. L.* 1. In that case there were two executors and an executrix, and the former settled their accounts informally, out of court, with the latter, taking from her a covenant to indemnify them for all damages, claims, &c., in consequence of their assent to such settlement, and it was held that a suit by such executrix to annul such agreement was not a breach of such covenant. Chief Justice Beasley, in the course of his opinion therein, said:

"The damages, claims or demands specified in the covenant are those that might result from the legal existence, as between the contracting parties, of the stipulation in regard to the accounts, and not such as might proceed from the endeavor, on the one side or the other, to put such stipulation out of existence. Indeed, the purpose of the covenant in suit seems clear. It was to provide against the obvious danger to these executors from the making of this irregular settlement, in view of the circumstance that other creditors might cite them before the court to settle their accounts, whereby the

arrangement with the defendant might be overhauled and they might be subjected to costs and other losses. But these parties did not contemplate, and therefore did not provide against the consequences of a controversy arising between themselves touching the legality of their agreement. There is no indemnification with respect to such consequences."

And in the present case there was no indemnification with respect to the services of an attorney in an action brought to recover the premium agreed to be paid in the application.

If the plaintiff is enabled to recover in this suit under the clauses in the application on which it relies, then it will immediately be entitled, on the recovery of such judgment, to institute a new suit for the recovery of expenses for attorney's services incident to the present litigation, and so on *ad infinitum,* since all those cases would, equally with this one, be a damage to which it was put under the contract or obligation. Of course, nothing of the kind was within the contemplation of the parties.

The judgment below will be affirmed, with costs.